## MOLAIR v. RAILWAY COMPANY.

1. Under the act of 1878 (16 *Stat.*, 698), and section 345 of the Code, construed together, notice of appeal from an order, decree, or judgment, must be given in writing within ten days after the rising of the court, if such order, &c., was rendered during term time, or within ten days after notice of a decree, &c., rendered during vacation. Notice of appeal given within ten days after entry of judgment on a verdict rendered in term time, but more than ten days after the rising of the court, was sufficient.
2. The Circuit Judge is without jurisdiction to hear a motion on the minutes for a new trial after the term has ended.
3. The presumption of negligence having attached to a railroad company from the mere fact of killing stock on its road, the trial judge did not err in then charging the jury, that if a rule, establishing a rate of 18 miles an hour, was not reasonable, it was negligence to have such a rule, or if the train was not run as a reasonable and prudent man would have run it, it was negligence; the meaning of this charge being that whether this regulation could overthrow the negligence presumptively proven, would depend upon whether the regulation was reasonable, and had been prudently enforced. MR. JUSTICE McIVER, *dissenting*.
4. Where the Circuit Judge called the jury's attention to the existence of the stock law, but did not charge a correct legal proposition applicable to the case under the stock law, as contained in the syllabus of a case handed to the judge with a request to charge it, and no more formal request was made,—no ground exists for an exception. MR. JUSTICE McIVER, *dissenting*.
   Only result concurred in.

Before NORTON, J., Barnwell, November, 1888.

Action by Leroy Molair against the Port Royal and Augusta Railway Company. See this case, once before reported on a former appeal, in 29 S. C., 132.

The charge to the jury was as follows:

The gist of the action is negligence. Negligence is defined to be the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under existing circumstances would not have done, the essence of the fault being either in omission or commission. Counsel on either side have stated to you correctly the law, that the killing having been proven, the presumption is that the railroad company was negligent, and it is for the railroad to show that they were not negligent by the preponderance of evidence. * * * The presumption of law being that the defendant was guilty of negligence, if he rids himself of that presumption, he must do it by the preponderance of the testimony, and it is for you to take, under this definition of negligence that I have given you, all the circumstances that have been proven upon the stand, and from them you are to say whether the presumption of negligence has been rebutted or not.

You will inquire at the outset, whether the regulation of the company, if that has been established to your satisfaction, is a reasonable regulation or not. One of the witnesses, I believe, told you that the rules of the company required them to run at eighteen miles an hour; that they were running at this rate down grade on a foggy night; and it is for you to say whether that regulation is a reasonable one; not simply whether it is a reasonable one for the railroad company, in the discharge of its own business—that is, to its interest—to run it that way, but the question is, whether it was a reasonable one, looking to the interests of the people in the country as well as the company's own interest; for a railroad company is bound, as every other citizen of the country is, so to use his own property as not to injure his neighbors. You remember that the stock law is in existence, and the fact that the railroad company have such facilities as you know they have for the running and regulation of their trains, was that rule a reasonable one, that this train should have been running at the rate of speed, that it was said to have been run-

ning, under the circumstances under which it was running? If it was a reasonable rule under all the circumstances, why, of course, it is not negligence to have such a rule; but if it is not reasonable to have such a rule under those circumstances, then it is negligence.

Then your next inquiry is, if you decide that it was a reasonable rule, to inquire if it was running on that schedule, then did the engineer endeavor to prevent an accident—that is, use ordinary care to prevent the accident—taking the definition that I gave to you? Did they exercise such care as a reasonable and prudent person would have done under the same circumstances? If so the rule was reasonable, and was being carried out as a reasonable and prudent person would have carried it out under the circumstances, then the verdict ought to be for the defendant; but if the rule was not reasonable, or if it was not being carried out in the same way that a reasonable and prudent man would have taken the train, in order to prevent an accident, then you ought to find the verdict for the plaintiff. It is for you to take all the circumstances into consideration. The business of the railroad company gives some risks—they are allowed to run their trains; and in every business we take some risks, and we take some risks not only of injuring ourselves, but we take some risks of injuring our neighbors, and the question is not whether or not the trains were run so that some risks were taken, but whether or not a reasonable and prudent person would have made the rule, and whether or not he would have carried out the rule as this engineer, or whoever was in charge of the train, did carry it out, not simply for the purpose of benefiting the railroad company, but so as not to injure property of others.

The jury found a verdict for $425, and defendant appealed on the following exceptions:

I. Because his honor erred in charging the jury that the first question for them to consider was whether the rule of the defendant company, establishing a schedule of eighteen miles an hour, was a reasonable rule under the circumstances, and that, if such rule was not reasonable, then it was negligence to have such a rule. II. That his honor erred in charging the jury, that if they

believed that such rule was not reasonable, that it was negligence on the part of defendant to have such a rule, and they ought to find a verdict for the plaintiff.    III. Because his honor erred in charging the jury, that if such rule was not reasonable, or if the train was not run as a reasonable and prudent man would have run it, then defendant was negligent.    IV. Because the jury, under the charge of his honor, were required to find a verdict for the plaintiff, if they believed defendant's rule unreasonable, although they may have believed that neither such rule nor the operation thereof, was the cause of the injury complained of, and his honor erred in so charging.    V. Because, under the charge of his honor, the jury were required to find for the plaintiff, if they believed defendant negligent, even if they did not believe that such negligence was the cause of the injury complained of, and his honor erred in so charging.    VI. Because his honor erred in not charging, as requested by defendant, that "much less care is required of railroad companies in providing against stock on its track, since the passage of the stock law, than before its passage."

*Messrs. Elliott & Howe,* for appellant.

*Mr. Robert Aldrich,* contra.

November 15, 1889.    The opinion of the court was delivered by

Mr. Chief Justice Simpson.    The plaintiff, respondent, brought the action below to recover the value of certain mules alleged by him to have been negligently killed by defendant's train of cars.    The jury found a verdict for the plaintiff for $425, and the defendant gave notice of a motion for a new trial on the judge's minutes.    The court, however, adjourned without hearing this motion, and the appellant's attorney, supposing that he had an oral agreement with the attorney on the other side that said motion should be heard after the adjournment, sent his argument forward.    It turned out, however, that there was a misunderstanding as to the agreement,[1] and his honor, Judge Norton,

[1] NOTE BY THE COURT.—To prevent any misapprehension, we desire to say that the misunderstanding between counsel, referred to in this opinion, was not designed to indicate that counsel differed as to the facts of the agreement, but simply as to the construction to be placed upon it.

34 -31

declined to hear the motion on jurisdictional grounds, holding that he had no jurisdiction to hear a motion for a new trial at chambers, and after the court had adjourned. This was on the 10th of December, 1888. On the 4th of December, 1888, respondent had entered judgment on the verdict, but gave no notice thereof to appellants.

On the 14th December, 1888, appellant having been informed of the entry of the judgment on the 4th, gave notice of intent to appeal, by mailing the same to respondent's attorney, postage paid. This was a notice of appeal from the judgment entered on the 4th, and also from the refusal of his honor to hear the motion for a new trial on the 10th of December. These notices were received through the mail by respondent's attorney on the 16th of December, 1888. It should have been stated above, that the rising of the court at which the case was tried, took place on the 29th of November, 1888, fifteen days before the notice of appeal was deposited in the post office. In the meantime, however, before the regular notice of intent to appeal, and within the ten days from the rising of the court, appellant's attorney, in a letter to respondent's attorney, stated that as soon as he was notified of the entry of judgment, he would appeal if his motion for a new trial failed. The exceptions of appellant will be found below.

But before the appeal was heard upon the merits, &c., the respondent moved to dismiss the appeal, on the ground that the notice of intent to appeal had not been served within ten days from the rising of the court at which the case was tried. This is the first question for our consideration. There is no doubt as to the facts in reference to this notice of intent. The court, as stated above, rose on the 29th of November, 1888, and the notice was deposited in the office at Beaufort on the 14th of December, fifteen days after the rising of the court. So that, if ten days is the limit from the rising of the court, the appeal must be dismissed, as there is no cure for a failure to comply with the law, in the matter of such a notice.

What is the law upon that subject under the old code, and before the act of 1878? Appeals to this court, under subdivision two, of section eleven, were required to be taken within sixty days after written notice of the order appealed from, and every

other appeal allowed by chapter second of that title, within three months after the judgment appealed from was perfected by filing the judgment roll. *Old Code*, section 357. And the notice had to be given in writing. § 353. The act of 1878, however, made a change by providing, in its second section, that in every appeal from an order, decree, or judgment, or other matter, the appellant should give notice of his intent to appeal within ten days after written notice that such order, decree, or judgment had been granted or rendered at chambers ; or, if granted or rendered during term time, within ten days after the rising of the court.

While this act was of force, the case of *Bank* v. *Gary* (14 S. C., 571) was heard by this court, in which was involved a motion to dismiss the appeal for want of the legal notice of intent to appeal, as alleged. In that case, which was a jury case, a verbal notice of appeal, upon the rendition of the verdict and before judgment was entered up, was given ; afterwards the judgment was entered, and within ten days after notice of such entry, the appellant gave written notice of appeal. Under this state of facts, the court held, that inasmuch as the act of 1878 did not require that a written notice of intent should be given, the verbal notice, which was within the ten days from the rising of the court, was sufficient. It also held that there could be no appeal from a verdict merely ; that there must be a judgment, and the notice having been given within ten days after the entry of judgment, it was sufficient.

It will be observed that the act of 1878 covered all appeals, whether in cases of law or in chancery, the language being, "that in every appeal from an order, decree, or judgment," &c., the difference as to the time of the notice depending upon the fact whether said order, decree, or judgment was granted or rendered at chambers or in term time—in the first within ten days after written notice of the granting, &c., and in the second within ten days from rising of the court. In section 345 of the Code, found in General Statutes of 1882, a second act was passed upon this subject—the act now of force. In that section, the 2nd subdivision provides that in every appeal to the Supreme Court from an order, decree, or judgment, or other matter not tried *before a*

*jury*, then the notice shall be as stated above in the act of 1878. See Code, in General Statutes, section 345, 2nd subdiv.

The act of 1878 embraced, as we have said, all appeals, whether in cases at law or chancery, whether tried before a jury or not; while section 345 of the Code, *supra*, confined its action to cases not *tried before a jury.* Now, we can hardly suppose that it was the intent of section 345 of the Code, *supra*, to repeal the entire act of 1878, leaving appeals from jury cases unprovided for. We think that the act of 1878, as to cases tried before a jury, is not expressly repealed, nor is it inconsistent with section 345. These two acts must be construed together, and when so construed, we think it follows, that in every appeal, whether in a case at law or a case in chancery, where the order, decree, or judgment is rendered in term time, the notice must be given within ten days after the rising of the court, and, as now provided, such notice must be in writing; and in orders, decrees, or judgments rendered at chambers, within ten days after written notice of the granting, &c., of such orders, decrees, or judgments.

The difficulty, however, in the case before us is not relieved yet. Here, the judgment appealed from was not rendered at chambers, nor during term time. It was a jury case, and although the verdict was obtained in term time, the judgment was not entered until some time after the rising of the court. And it is contended, that inasmuch as there can be no appeal from a verdict (*Bank* v. *Gary*), but only from a judgment, and as the notice here was within ten days from the entry of the judgment, said notice should be held sufficient. This is a new question, and is not free from difficulty. It certainly is not covered by the language used in either the act of 1878 or 1880. In both of these acts, the terms employed are "granted or rendered during term time." It may be, that, after verdict, the judgment is to be regarded for some purposes as rendered thereon at once, but in the matter of appeal, it must be filed and entered before the appeal is taken; otherwise, inasmuch as other steps are to be taken within certain prescribed time after the notice, the appeal might be perfected without any judgment at all having been entered. This would be in conflict with the law allowing appeals, which confines them to orders, decrees, and judgments. We think there

is a *casus omissus* here, and in the absence of any act distinctly prescribing the time in such cases, and in favor of the right of appeal, we must hold the notice given as sufficient, especially as it was given within ten days after notice of the entry of the judgment appealed from. *Bank* v. *Gary, supra.*

As to the refusal of his honor to hear the motion for a new trial after the adjournment of the court, we think his honor was entirely correct. The code expressly provides that this is one of the motions that cannot be heard at chambers. Besides, express provision is made for hearing such motions on the minutes of the court, and also upon a case stated for the next court. Code, sec. 287.

This brings us to the appeal on its merits. It is founded upon six exceptions, which will be found in the "Case." The first four raise substantially the same question. It appears, or at least it seems to have been contended on the part of the defendant, that the train was running at the rate of 18 miles an hour under regulation of the company, and this was relied on in part as a defence; and it is alleged that his honor charged that whether this would be a good defence, would depend upon the fact, whether this was a reasonable regulation or not; and that if it was not reasonable, the verdict should be for the plaintiff, although the jury might believe that neither the regulation nor the operation thereof was the cause of the injury complained of. Upon reading the charge as a whole, we do not think it is subject to the construction put upon it by appellant as presented in these exceptions. It must be remembered, that plaintiff having proved the killing, a presumption of negligence attached at once, which it was incumbent on the defendant to remove. In other words, the plaintiff having made out a *prima facie* case of negligence, under *Danner's Case* (4 Rich., 329) and the cases subsequent to that case, he was entitled to a verdict, unless this *prima facie* negligence had been overthrown.

It was to this state of facts that the portion of the charge objected to was addressed, and his honor did not charge, even in general terms, that if the regulation of the company was unreasonable, or if it was not carried out, the company would be liable, even though the jury might not be satisfied that this caused the

injury. But a *prima facie* case of negligence having already been made out, the question was upon its removal, and his honor charged (or at least such is the true intent of the charge, as we understand it), that in so far as said regulation would have effect, it would depend upon the fact, whether said regulation was a reasonable one, and whether it had been carried out as reasonable and prudent persons should carry it out. Thus understood (and we think this is what his honor meant), the plaintiff had greater cause of complaint than the defendant, for the reason that the charge, when thus understood, limited the matter of negligence to the question, whether the regulation of the company was reasonable or unreasonable, and whether, if reasonable, it had been prudently carried out; whereas the plaintiff had made out a *prima facie* case of negligence, not based solely on the fact that the regulations of the company were unreasonable, or, if reasonable, that they had not been properly carried out, or that the failure to observe the regulations, whether reasonable or unreasonable, was the cause of the injury, but based upon negligence presumed by law from the killing.

This negligence in such cases might result from various causes. His honor's charge, however, excluded them all, except the reasonableness or unreasonableness of the rule of the company as to the speed of the train, and if reasonable, whether it had been prudently carried out. We do not understand that his honor instructed the jury, that if, in their opinion, the regulation was unreasonable, or if reasonable and not prudently carried out, that they could assume that to be the negligent cause of the injury. But he meant that negligence having already been presumptively proved, that whether the regulation could overthrow this presumption, would depend upon whether such regulation was reasonable, and, if so, whether it had been prudently enforced.

If the negligence relied on by the plaintiff had been based entirely upon faulty regulations of the company, or upon a failure to enforce prudently reasonable regulations, then his honor's charge would have been fair to both sides; but when the plaintiff relied on negligence in the killing, growing out of any and all causes that could show negligence, we do not think the defendant has cause to complain that his honor should have limited the

question, as he did.   His honor went further, and charged that if the regulation was a reasonable one, and was being carried out in the same way as a reasonable and prudent man would have taken the train, in order to prevent an accident, then the verdict should be for the defendant.   Certainly the defendant could not complain of this, nor do we think of the converse of this, to wit, if the rule was not reasonable, or if it was not carried out as a prudent man should have carried it out, then the verdict should be for the plaintiff, thus giving the defendant the advantage of having the whole case to turn upon the rule, and whether it had been prudently enforced.

We do not think the charge is obnoxious to the 5th exception, as will be seen from what has been said above.

The 6th and last exception alleges error, because his honor refused to charge as requested, to wit, much less care is required of the railroad company in providing against stock on its track, since the passage of the stock law, than before its passage.   It is stated that at the beginning of the argument by appellant's counsel, he read the syllabus of *Joyner's Case* from the book (26 S. C.), and handed it to the judge with an oral request to charge. His honor, in settling the case, states that this not being a formal request to charge, and the undisputed legal proposition having been fully stated in the hearing of the jury, it seemed to the judge only necessary to call the attention of the jury to the stock law, and their duty to consider it in connection with the question of negligence, which was done.   This is very different from the recent case of *Harley* v. *Eutawville R. R. Co.*, *ante*, 151, where the judge unqualifiedly refused to charge a similar request.   We think that appellant, if not satisfied, should have made a more formal and distinct request, and at the proper time and in the usual way.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN.   The judgment appealed from is the second in the case for the plaintiff.   See 29 S. C., 132.   I concur in the result.

Mr. Justice McIver. There are three general questions presented in this case : 1st. Whether the motion to dismiss the appeal should be granted upon the ground that the notice of intention to appeal was not given in the prescribed time. 2nd. Whether the Circuit Judge erred in declining to take jurisdiction of the motion for a new trial on the minutes. 3rd. Whether the exceptions to the judge's charge can be sustained.

As to the first question, while I concur in the result reached by the Chief Justice, I cannot assent to the grounds upon which he rests his conclusion. Under the statutes as they now stand, I am unable to find any law prescribing the time within which notice of intention to appeal shall be given, *in a case tried by a jury.* This may be, and doubtless is, a clear case of *casus omissus,* but I see no authority for this court to supply such omission. On the contrary, while the Code as originally adopted, and as it now stands, contained various provisions authorizing this court or the justices thereof, or in some cases the judges of the Circuit Court, to extend the time for doing various acts, or to relieve parties failing to take certain required steps necessary to perfect an appeal, such provisions were always accompanied with an exception as to the time for giving notice of appeal. See sections 353 and 420 of the Code as originally adopted, and sections 339, 345, 348, 349, of the present Code. So that it seems to me that the legislature has been careful to avoid delegating to this court any authority whatever in regard to regulating the time within which notice of appeal must be given, and that we must look alone to the statutes for the law upon that subject; and if, in a given case, we are unable to find any statutory provision prescribing the time, this court has no authority to dismiss an appeal in such case, on the ground that the notice has not been given in time. The only statutory provisions upon this particular matter are those found in section 345 of the present Code, which is divided into various subdivisions, of which only the first two are pertinent to the present inquiry. The first relates only to exceptions for the purposes of appeal in a specified class of cases, to wit, "cases tried before a jury," and makes no reference whatever to the notice of appeal. But the second deals only with an entirely different class of cases, to wit, those "not tried before a

jury," and not only prescribes the time within which the notice of appeal shall be given in such cases. but also the time within which the "Case" with the exceptions shall be served. It seems to me therefore that there is a clear omission to prescribe any time within which a notice of appeal shall be given *in a case tried by a jury.*

I do not think it will do to say that the language of the second subdivision is broad enough to cover both classes of cases. The language is : "In every appeal to the Supreme Court from an order, decree, or judgment, or other matter not tried before a jury, from which an appeal may be taken to the Supreme Court, the appellant or his attorney shall," &c.  Now, if our attention is limited to the opening words of the subdivision : "In every appeal to the Supreme Court," the language certainly would be broad enough to cover an appeal in *any* case, the words *"every appeal"* would undoubtedly cover an appeal in any kind of a case.  But it would be a singular rule of construction to read these opening words without regard to the qualification annexed to them.  On the contrary, we are bound by every sound rule of construction to read them in connection with the qualification annexed.  So read, it seems to me that the plain meaning is, that in *every* appeal *in the class of cases mentioned*, the requirements of the subdivision must be complied with, and there is no warrant whatever for exacting such requirements in any cases not mentioned.  The distinction between cases tried by a jury and those not tried by a jury is marked, and is fully recognized in the Code as well as in practice.  Hence where we find special statutory provision, which in express terms are made applicable to one of these classes of cases, and other statutory provisions which in like terms are made applicable to the other, I do not see by what authority we can apply the latter to the former or *vice versa.*

It is said, however, that it could not have been the intention to repeal the entire act of 1878 (16 *Stat.*, 698), by the adoption of section 345 of the Code, as it now stands, but that these two acts must be read together, and so reading them, the second section of the act of 1878, from which the second subdivision of section 345 was taken, would be sufficient to cover a case tried by a

jury, as well as a case not tried by a jury. But I do not see how it is possible to sustain such a position in face of the express declaration found in section 449 that "all statutory provisions inconsistent with this Code of Procedure are repealed;" for certainly the statutory provision contained in the second section of the act of 1878, whereby its provisions are made applicable to an appeal in all classes of cases, is wholly inconsistent with section 345 of the Code, which expressly limits the application of such provisions to a particular class of cases, to wit, those not tried by a jury. Indeed, I do not see how the legislature could have more clearly indicated their intention to limit the application of the provisions of the second section of the act of 1878 to the specified class of cases, than by the fact that when incorporating the provisions of the second section of that act into the new Code, as subdivision 2 of section 345, they were careful to insert the words, "not tried before a jury," which could have no other effect than to limit the provisions of such subdivision to that class of cases. They thus unmistakably declared their unwillingness that such provisions should any longer apply to *all* classes of cases, and their intention that from that time forward they should be limited to the particular class specified.

It may be said that rule 50 of the Circuit Court requires that the notice of appeal shall be given within ten days after the rising of the court. But without repeating what has hereinbefore been intimated, that this court has no power to fix by rule the time for giving notice of appeal, it is quite sufficient to say that even under that rule the present appeal could not be dismissed. It provides that, "In every appeal to the Supreme Court from matter appealable, the appellant, or his attorney, shall, within ten days after written notice of the filing of such matter appealable, or if filed within term time, within ten days after the rising of the Circuit Circuit, give written notice," &c. Now, as the judgment in this case was *not* filed within term time, and the notice of appeal was given within ten days after notice of the filing or entry of the judgment, the appellant is within the rule.

In the absence, therefore, of any law prescribing the time within which notice of appeal shall be given *in a case tried by a jury,* as this was, I do not think the appeal can be dismissed on the

ground that notice of appeal was not given within ten days after the rising of the court at which the case was tried. It may be, and doubtless is, the fact that this is the result of an oversight, which it is not difficult to account for. In section 357 of the Code, as originally adopted, it was provided that an appeal under subdivision two of section eleven must be taken within sixty days after written notice of the order shall have been given to the party appealing, and other appeals within two years (afterwards reduced to three months by the act of 1873, 15 *Stat.*, 500) after the judgment shall be perfected by filing the judgment roll; and in section 353 it was prescribed that the appeal must be taken by the service of a notice in writing on the adverse party and on the clerk. Thus the law stood until the passage of the act of 1878, above referred to, which this court held, in *Scurry* v. *Coleman* (14 S. C., 166), covered the whole subject of appeals, at least so far as related to the time within which, and the manner by which, appeals must be taken, though not relating to the matter from which an appeal might be taken. *Hyatt* v. *McBurney*, 17 S. C., 143.

Thus the act of 1878, providing, as it did, that in every appeal notice—not written notice—must be given within ten days, either from the rising of the court or from the receipt of written notice of the filing of the matter appealed from, according as the same may have been made or rendered in term time or in vacation, superseded the provisions of section 353 requiring the notice to be *in writing*, as well as the provisions of section 357 prescribing the times within which appeals must be taken. While the law thus stood, it was held in *Bank* v. *Gary* (14 S. C., 571), that a verbal notice of appeal might be sufficient, as the act of 1878, covering the whole subject of the time and manner of taking appeals, did not require the notice to be in writing; and for the same reason it was held in *Crane, Boylston & Co.* v. *Moses* (13 S. C., 43), that the notice of appeal need no longer be served on the clerk. But when the present Code was adopted, and the second section of the act of 1878, with a very important amendment restricting its operation to a certain class of cases, to wit, those "not tried before a jury," was incorporated therein as subdivision 2 of section 345, and the other class, to wit, those "tried

before a jury," was left unprovided for, so far as prescribing a time within which *notice of appeal* must be given in that class of cases, though the first subdivision does fix the time within which "*exceptions* for the purpose of appeal" must be taken and served in cases of that class. So by the insertion in section 339 of the present Code of that provision in section 357 of the old Code, requiring all notices of appeal to be in writing, a verbal notice would now no longer be sufficient.

But in addition to this, inasmuch as there is no law, or even rule of court, so far as I know, prescribing any particular form in which notice of appeal shall be given, except that it must be in writing, I do not see why the notice contained in the letter of 8th December, 1888, from appellant's attorney to respondent's attorney, covering, as it did, the exceptions, which was served by mailing the same within ten days from the rising of the court, should not be regarded as sufficient.

It seems to me, therefore, that in no view of the case can the motion to dismiss the appeal be granted upon the ground of a failure to serve notice thereof within the prescribed time.

As to the second general question, I concur in the conclusion reached by the Chief Justice. It seems to me that the provisions of sections 286 and 287, when considered together, require that a motion for a new trial on the minutes must be heard and decided at the same term at which the case was originally tried, and therefore after the expiration of the term the Circuit Judge has no jurisdiction to hear such a motion. This may be, and doubtless would be, in some cases a very unfortunate result, and tend to the defeat rather than the promotion of the ends of justice. If a case is tried in the last hours of the term, it is difficult to see how it would be possible for a motion for a new trial on the minutes of the judge to "be heard and decided at the same term;" but it is sufficient for us to say, *Ita lex scripta est.* If a remedy is needed, this court is not competent to supply it, and it must be sought from another department of the government.

Upon the remaining general question as to the merits, I cannot concur in the conclusions reached by the Chief Justice. To maintain this action, it was necessary for the plaintiff not only to show negligence on the part of the defendant, but also that the

injury complained of was the result of such negligence, *Glenn* v. *Railroad Company* (21 S. C., 466), and this doctrine is recognized in the recent case of *White* v. *Railroad Company.* This well settled and most reasonable doctrine was, it seems to me, entirely disregarded when the Circuit Judge, in speaking of the regulation which the defendant company had adopted as to the rate of speed at which its trains should be run, instructed the jury as follows : "If the rule was not reasonable, or if it was not being carried out in the same way that a reasonable and prudent man would have taken the train in order to prevent an accident, then you ought to find a verdict for the plaintiff," as it ignored the other essential element, that the injury complained of was the result of such negligence, either in adopting or carrying out such regulation.    Both reason and authority unite in declaring that no matter what amount of negligence may be shown, the plaintiff is not entitled to a verdict until it is also shown that such negligence had some agency in producing the injury complained of; and as was said in *White's Case, supra,* the failure to thus qualify the instruction may have misled the jury.    I am unable to perceive how this, to my mind, manifest error can be rectified or explained away by the rule in Danner's Case.    That rule is no doubt most potent and efficacious in supplying deficiencies in the proof of negligence, but I do not see how it can be so extended as to correct errors in charging the jury.

I think also that the Circuit Judge erred in declining to charge the request as set out in the sixth exception.    There does not seem to be any controversy as to the correctness of the legal proposition contained in that request, and since the case of *Joyner* v. *Railway Company* (26 S. C., 49), and the cases therein cited, followed by the very recent case of *Harley* v. *Eutawville Railroad Co., ante* 151, there could scarcely be a question as to that point. . Nor does it appear that the proposition contained in the request was inapplicable to the case.    But it is said that the request was informally submitted, "and the undisputed legal proposition having been fully stated in the hearing of the jury, it seemed to the judge only necessary to call the attention of the jury to the existence of the stock law, and their duty to consider it in connection with the question of negligence, which was done." On

turning to the charge as set out in the "Case," we find that the only allusion to the stock law was in these words: "Well, now, gentlemen, you remember that the stock law is in existence, and the fact that the railroad company have such facilities as you know they have for the running and regulation of their trains, was that rule [referring to the regulation of the rate of speed] a reasonable one, that this train should have been running at the rate of speed that it was said to have been running under the circumstances under which it was running?"

It thus appears that the refusal or omission to charge an undisputed legal proposition, applicable to the case, is rested upon three grounds: 1st. That the request was informally presented. 2nd. That the proposition had been fully stated in the hearing of the jury. 3rd. That the attention of the jury was in fact called "to the existence of the stock law, and their duty to consider it in connection with the question of negligence."

1st. As to the alleged informality of the request. It is stated in the "Case" that defendant's counsel, in the beginning of his argument, read the syllabus of *Joyner's Case, supra,* from the book, and handed it to the judge with an oral request to charge, "That much less care is required of railroad companies in providing against stock on its track since the passage of the stock law than before its passage." Turning to the book we find this language in the syllabus of that case, and therefore it cannot be denied that the request was submitted to the judge, not orally, but in print. True, it was not *in writing,* as required by the rule of court, and surely it cannot be regarded as an informality that the request as handed up to the judge was printed instead of being written. I cannot think that such informality, if such it be, would justify a disregard of the request.

2nd. Could the request be properly disregarded on the ground that the proposition therein contained had been fully stated, without dispute, in the hearing of the jury? I think not. The fact that the proposition had been stated in the hearing of the jury without dispute goes for nothing. What was wanted, and what the party submitting the request was entitled to have, provided it was legally correct, was the *imprimatur* of the judge. If it had been repeated by his counsel many times in the hearing of

the jury, without denial from the other side, the party would still have the right to demand that the judge, from whom alone the jury are authorized to receive the law, should explicitly instruct the jury as to any legal proposition applicable to the case to which his attention has been called by a request to charge.

3rd. Was the jury, in fact, instructed as requested? It seems to me very plain, from the quotation made from the charge above, that they were not. While it is quite true that a Circuit Judge is not bound to follow the phraseology in which a request is couched, yet I think he is bound to instruct the jury as to the correctness or incorrectness of the legal proposition contained in the request, provided always that it is applicable to the case, as to which there is no question here. The only allusion to the stock law which can be found in the charge is a mere passing one, confining its operation and effect entirely to the regulation of the speed of the trains, without any regard whatever to its operation in excusing any want of care in any other respect. I think, therefore, that there was error in declining or omitting to charge the substance, at least, of the undoubted legal proposition clearly applicable to the case, as stated in the request submitted.

Judgment affirmed.